**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

UNITED STATES OF AMERICA          §
*ex rel.* ROBERT REDDELL and          §
ROBERT HENDRIX,          §
          §
          Plaintiffs,          §
          §
*versus*          §          CIVIL ACTION NO. 1:14-CV-86
          §
DYNCORP INTERNATIONAL, LLC,          §
DAMCO U.S.A., INC, and DAMCO          §
INTERNATIONAL B.V.,          §
          §
          Defendants.          §

## MEMORANDUM AND ORDER

Pending before the court is Defendant Damco International B.V.'s ("Damco BV") Motion to Dismiss (#91) Relators Robert Reddell and Robert Hendrix's (collectively, "Relators") Third Amended Complaint (#83) for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and Motion to Stay Discovery (#98).  Having considered the pending motions, the submissions of the parties, the complaint, and the applicable law, the court is of the opinion that Damco BV's Motion to Dismiss (#91) should be granted and its Motion to Stay Discovery (#98) should be denied as moot.

I.          Background

On February 5, 2014, Relator Robert Reddell ("Reddell")[1] filed this *qui tam* action, asserting that Defendants DynCorp International, LLC ("DynCorp"); DynCorp International Inc.; Damco U.S.A., Inc. ("Damco USA"); and Damco BV (collectively, "Defendants") perpetuated a scheme to defraud the United States of America (the "Government"), in violation of the False

_____

[1] Relator Robert Hendrix ("Hendrix") joined as a relator in this case on May 30, 2017 (##30-32).

Claims Act (the "FCA"), 31 U.S.C. §§ 3729-3732.[2]  DynCorp is a prime contractor providing logistical support to the United States Army under the Logistics Civil Augmentation Program ("LOGCAP") IV.   DynCorp performs some of its obligations under its contract with the Government through subcontractors, such as Damco USA, which provides DynCorp with freight forwarding services.  Relators allege that during the bidding process to win a freight forwarding contract with DynCorp, Damco USA submitted a deceptively low bid which did not include accessorial costs that were included in its competitors' bids.  As a result, in late 2011, DynCorp awarded Damco USA the contract, and the parties entered into the Master Services Agreement (the "MSA") that is the subject of this *qui tam* action.  Relators contend that once Damco USA began performing under the MSA, it systematically overcharged DynCorp—which passed the inflated charges onto the Government—by adding accessorial costs and other charges that were not permitted under the MSA.

Relators argue that Damco BV should be held liable for Damco USA's conduct because of its relationship with Damco USA.  The alleged wrongful conduct includes submitting false, fraudulent, and otherwise improper charges to DynCorp, knowing that DynCorp would be reimbursed by the Government; persuading DynCorp to make false representations to the Government in order to justify the inflated charges and obtain the Government's approval to modify and renew Damco USA's freight forwarding contract with DynCorp; and conspiring with DynCorp to present and obtain reimbursement from the Government for improper claims.

---

[2] Defendant DynCorp International Inc., the parent company of DynCorp, was voluntarily dismissed by Relators pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) (#87) on June 18, 2018. Thus, the court uses "DynCorp" to refer to DynCorp International, LLC, only.

According to Relators' Third Amended Complaint (#83), the operative complaint in this action, Damco BV is a foreign entity that is incorporated in the Netherlands and maintains its headquarters at Turfmarkt 107 2511 DP, The Hague, The Netherlands.  The parties dispute the nature of the relationship between Damco BV and Damco USA.[3]  Relators allege that Damco BV and Damco USA are both managed by Damco International A/S, which was formerly known as Maersk Logistics International A/S, and all three entities are subsidiaries of A.P. Moller-Maersk Group.[4]  In contrast, Damco BV and Damco USA's Corporate Disclosure Statement (#104) indicates that they are wholly owned subsidiaries of Damco International A/S, which is a wholly owned subsidiary of A.P. Moller-Maersk A/S.  In support of their assertion that Damco BV should be held accountable for Damco USA's actions in this lawsuit, Relators contend that Thomas Kristensen ("Kristensen"), in addition to James Percival ("Percival") and other executives of the aforementioned entities, directed much of Damco USA's interaction with DynCorp and the Government.

Relators assert that Damco BV has sufficient contacts with the United States as a whole either on its own or through its relationship with Damco USA such that the court's exercise of personal jurisdiction over it would be proper.  In the pending motion, Damco BV argues that it is not subject to the court's jurisdiction because it is a foreign entity and Relators have failed to establish:   (1) the court's general personal jurisdiction; (2) the court's specific personal

---

[3] Relators frequently refer to Damco BV and Damco USA collectively as "Damco," a characterization that Damco BV contests.

[4] Although Relators allege that Damco BV and Damco USA are corporate affiliates in the Third Amended Complaint (#83, at 12-13 ¶¶ 17-19), Exhibit 20 to their Response, a Dun & Bradstreet report for Damco USA last updated on January 31, 2017 (#99-21, at 2), indicates that Damco BV is Damco USA's foreign parent with 100 percent ownership of its capital stock (*Id.* at 5).

jurisdiction; or (3) an alter ego theory of personal jurisdiction.  In addition, Damco BV avers that Relators are not entitled to jurisdictional discovery.

II.    Analysis

    A.    Dismissal for Lack of Personal Jurisdiction under Rule 12(b)(2)

When a nonresident defendant files a motion to dismiss for lack of personal jurisdiction, the party seeking to invoke federal court jurisdiction over the nonresident defendant has the burden of showing that the exercise of personal jurisdiction is proper.  *Sangha v. Navig8 Shipmanagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018); *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 211 (5th Cir. 2016); *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014); *Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013); *Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.), *cert. denied*, 548 U.S. 904 (2006).  Generally, to satisfy this burden, the plaintiff need only present facts sufficient to establish a *prima facie* case of personal jurisdiction; proof by a preponderance of the evidence is not required.  *Sangha*, 882 F.3d at 101; *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 211; *Luv n' care, Ltd.*, 438 F.3d at 469; *see Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398-99 (5th Cir. 2009); *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006).

When ruling on a motion to dismiss for lack of personal jurisdiction, the court "has considerable procedural leeway."  *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).  "In resolving this issue, not only the well-pleaded allegations of the complaint may be considered, but also factual showings made by way of depositions and affidavits."  *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 488 (5th Cir. 2018) (quoting *Simon v. United States*, 644 F.2d 490, 497 (5th Cir. 1981)).  Pertinent factual materials may include "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of

4

discovery." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)).   Nevertheless, the court must accept as true the plaintiff's uncontroverted allegations contained in the complaint, so long as the allegations are not merely conclusory, and resolve all factual conflicts in favor of the party seeking to invoke the court's jurisdiction.  *Ritter*, 768 F.3d at 431; *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003); *Revell*, 317 F.3d at 469.

       1.     The Applicable Standard

A federal court typically has personal jurisdiction over a nonresident defendant when (1) the nonresident defendant is amenable to service of process under the forum state's long-arm statute and (2) the assertion of jurisdiction over the defendant is consistent with the Due Process Clause of the Fourteenth Amendment.  *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999); *see Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, ___ U.S. ___, 137 S. Ct. 1773, 1779-80 (2017); *Walden v. Fiore*, 571 U.S. 277, 283 (2014); *Seiferth*, 472 F.3d at 270. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which the individual has established no meaningful 'contacts, ties, or relations.'"  *Dickson Marine Inc.*, 179 F.3d at 336 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945))); *see Walden*, 571 U.S. at 283-84.

Personal jurisdiction comports with constitutional due process requirements when (1) the nonresident defendant has certain minimum contacts with the forum state resulting from an affirmative act or acts on its part and (2) it is not unfair or unreasonable to require the nonresident defendant to defend the lawsuit in the forum state.  *Walden*, 571 U.S. at 283; *Burger King Corp.*, 471 U.S. at 474-77; *Int'l Shoe Co.*, 326 U.S. at 316; *Trois*, 882 F.3d at 488-89.  "'[T]he

constitutional touchstone' for asserting personal jurisdiction over a nonresident defendant is 'whether the defendant purposefully established "minimum contacts" in the forum State.'" *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000) (quoting *Burger King Corp.*, 471 U.S. at 474); *see Walden*, 571 U.S. at 284; *Trois*, 882 F.3d at 489. The Supreme Court has held that contacts resulting from the "unilateral activity of another party or a third person" who claims some relationship with a nonresident defendant cannot alone satisfy the requirement of contact with the forum state. *Walden*, 571 U.S. at 284; *Burger King Corp.*, 471 U.S. at 475 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)); *accord Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). Likewise, "random, fortuitous, or attenuated contacts" do not count in determining the existence of minimum contacts. *Walden*, 571 U.S. at 286 (quoting *Burger King Corp.*, 471 U.S. at 475); *accord Moncrief Oil Int'l Inc.*, 481 F.3d at 312; *Luv n' care, Ltd.*, 438 F.3d at 470 n.7; *Dickson Marine Inc.*, 179 F.3d at 337.

A court may exercise either general or specific jurisdiction over a nonresident defendant, depending on the circumstances. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1779-80; *In re DePuy Orthopaedics, Inc.*, 888 F.3d 753, 778 (5th Cir. 2018); *Ritter*, 768 F.3d at 432-34; *Luv n' care, Ltd.*, 438 F.3d at 469; *see Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 nn.8-9. "General jurisdiction" applies when the defendant's contacts at issue have no necessary relationship to the cause of action, but the forum nevertheless has an interest in the defendant because the defendant has continuing and systematic contacts with the forum. *In re DePuy Orthopaedics, Inc.*, 888 F.3d at 778; *Sangha*, 882 F.3d at 101-102; *Ritter*, 768 F.3d at 332; *see Burger King Corp.*, 471 U.S. at 473 n.15; *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 n.9. Thus, to establish general jurisdiction, the plaintiff must show that the defendant has

substantial contacts with the forum. *Alpine View Co.*, 205 F.3d at 217; *Dickson Marine, Inc.*, 179 F.3d at 336.

A court may exercise "specific jurisdiction" over a nonresident defendant when the lawsuit arises from or relates to the defendant's conduct within the forum state. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780; *Walden*, 571 U.S. at 284; *Burger King Corp.*, 471 U.S. at 473; *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 n.8; *Moncrief Oil Int'l Inc.*, 481 F.3d at 312 n.2. In fact, "even a single act can support jurisdiction," provided that it creates a "substantial connection" with the forum, as opposed to an "'attenuated' affiliation." *Burger King Corp.*, 471 U.S. at 476 n.18 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

For jurisdiction to be appropriate, not only must a defendant purposefully establish minimum contacts with the forum state, but the plaintiff's maintenance of the suit must also comport with the "traditional notions of fair play and substantial justice." *Trois,* 882 F.3d at 489 (quoting *Int'l Shoe Co.*, 326 U.S. at 316); *accord Walden*, 571 U.S. at 284; *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 211; *Moncrief Oil Int'l, Inc.*, 481 F.3d at 311. Hence, "[o]nce a plaintiff establishes minimum contacts between the defendant and the forum State, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable." *Sangha*, 882 F.3d at 102 (citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999)). "The defendant must make a 'compelling case.'" *Sangha*, 882 F.3d at 102 (citing *Burger King Corp.*, 471 U.S. at 477).

> In determining whether the exercise of jurisdiction is fair and reasonable, the court must balance: (1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial

system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies.

*Sangha*, 882 F.3d at 102 (citing *Burger King Corp.*, 471 U.S. at 477; *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 115 (1987)); *accord Bristol-Myers Squibb Co.*, 137 S. Ct. at 1786; *World-Wide Volkswagen Corp.*, 444 U.S. at 292; *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 630 (5th Cir. 1999). Determinations regarding the fairness of the exercise of personal jurisdiction over nonresident defendants must be made on a case-by-case basis. *Asahi Metal Indus. Co.*, 480 U.S. at 115; *Polythane Sys., Inc. v. Marina Ventures Int'l, Ltd.*, 993 F.2d 1201, 1206 (5th Cir. 1993), *cert. denied*, 510 U.S. 1116 (1994).

2.      The False Claims Act and Rule 4(k)(2)

Damco BV argues that it does not have the minimum contacts with the State of Texas necessary for the court to exercise personal jurisdiction over it. Relators contend that personal jurisdiction is permissible under the FCA and Federal Rule of Civil Procedure 4(k)(2) because the due process analysis is based on Damco BV's contacts with the United States as a whole, not just its contacts with the forum state. The court agrees that the FCA and Rule 4(k)(2) provide the relevant standard and that the due process analysis should be based on Damco BV's nationwide contacts. The FCA authorizes worldwide service of process as long as the summons is issued by a court where venue is proper:

> Any [civil action for false claims] under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 [as false claims] occurred. A summons as required by the Federal Rules of Civil Procedure shall be issued by the appropriate district court and served at any place within or outside the United States.

31 U.S.C. § 3732(a). In a suit based on a federal statute that authorizes worldwide service of process, a district court may exercise personal jurisdiction over any party that has minimum

8

contacts with the United States as a whole. *See, e.g.*, *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 825-26 (5th Cir. 1996) (claim arising under ERISA (citing 29 U.S.C. § 1132(e)(2))); *Busch v. Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1258 (5th Cir. 1994) (claim under Securities Exchange Act (citing 15 U.S.C. § 78aa)); *United States ex rel. Tucker v. Christus Health*, No. 90-1819, 2012 WL 5351212, at *2 (S.D. Tex. Oct. 23, 2012) (claim arising under FCA (citing 31 U.S.C. § 9792(a))); *see also Luallen v. Higgs*, 277 F. App'x 402, 404-05 (5th Cir. 2008) (affirming *Busch*, 11 F.3d 1255).

Federal Rule of Civil Procedure 4(k)(2) provides:

For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

(A)     the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

(B)     exercising jurisdiction is consistent with the United States Constitution and laws.

FED. R. CIV. P. 4(k)(2); *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 234 (5th Cir. 2016).  Like the FCA, Rule 4(k)(2) "provides for service of process and personal jurisdiction in any district court for cases arising under federal law where the defendant has contacts with the United States as a whole sufficient to satisfy due process concerns." *Patterson*, 826 F.3d at 234 (quoting *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 650 (5th Cir.), *cert. denied*, 543 U.S. 979 (2004)); *accord Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir.), *cert. denied*, 139 S. Ct. 480 (2018).  When the court's authority arises directly from federal law, the court considers a party's contacts with the United States as a whole, rather than just with the State of Texas, because due process is governed by the Fifth Amendment instead of the Fourteenth

Amendment. *Patterson*, 826 F.3d at 234 (citing *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 420 (5th Cir.), *cert. denied*, 534 U.S. 1055 (2001)).

Here, Damco BV is amenable to service of process under both the FCA and Federal Rule of Civil Procedure 4(k)(2) even though it is a foreign entity.  In addition, the parties do not dispute that Relators' claims arise under federal law or that Damco BV is not subject to any state's courts of general jurisdiction as required by Rule 4(k)(2)(A).  Instead, the issue is whether the second prong of the personal jurisdiction test is met, *i.e.*, whether the court's exercise of personal jurisdiction over Damco BV would be consistent with due process under the Fifth Amendment. Thus, Relators must allege sufficient facts from which it could be inferred that Damco BV's contacts with the United States as a whole are adequate to subject it to general or specific jurisdiction in the United States.  *See Patterson*, 826 F.3d at 234.

B.  General Jurisdiction

For Damco BV to be subject to general jurisdiction under Rule(4)(k)(2), it must maintain contacts with the United States that are so continuous and systematic as to render it essentially at home in the United States.  *Patterson*, 826 F.3d at 234 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)); *see Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))); *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 414 n.9; *Sangha*, 882 F.3d at 101-102. "Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required . . . .  [V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of

10

contacts are insufficient to support general jurisdiction." *Sangha*, 882 F.3d at 102 (quoting

*Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).   When general

jurisdiction applies, these contacts need not bear any relationship to the cause of action.

*Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (citing *Goodyear*, 564 U.S. at 919); *Helicopteros*

*Nacionales de Colombia, S.A.*, 466 U.S. at 414-16; *Sangha*, 882 F.3d at 101; *Alpine View Co.*,

205 F.3d at 217.   A corporation is generally at home in its place of incorporation and its principal

place of business.   *Daimler AG*, 571 U.S. at 136; *Patterson*, 826 F.3d at 234; *Ritter*, 768 F.3d

at 432.   There may be exceptional cases, however, in which a corporation could be subject to a

court's general jurisdiction in a forum other than its principal place of business or place of

incorporation.   *See Daimler AG*, 571 U.S. at 139 n.19; *Patterson*, 826 F.3d at 234; *Ritter*, 768

F.3d at 432.

In this case, it is undisputed that Damco BV is incorporated and has its principal place of

business in the Netherlands.   Therefore, to be amenable to general jurisdiction in the United

States, Damco BV must have other systematic and continuous contacts such that it is essentially

at home in the United States.   Specifically, with regard to Damco BV, Relators allege that Damco

BV (1) is registered to do business as a for-profit corporation in six states—New Jersey, New

York, California, Georgia, Utah, and Florida—with corporate mailing addresses and a registered

agent to accept service of process in the United States; (2) is associated with over 73,000

shipments to the United States, primarily to Los Angeles, California; Newark, New Jersey; Long

Beach, California; Savannah, Georgia; and Charleston, South Carolina; and (3) maintains business

relationships with several United States companies, including Damco USA, Kmart Corporation,

and Icon Health and Fitness.   Moreover, Relators contend that Damco BV has applied for an

Ocean Transportation Intermediary License from the Federal Maritime Commission and has used federal courts in the United States to enforce its rights in Puerto Rico and New Jersey.

Damco BV's contacts, as alleged, however, are insufficient to show that Damco BV has the systematic and continuous contacts as to render it at home in the United States.  In *Perkins v. Benguet Consolidated Mining Co.*, the Supreme Court of the United States found that a Philippine corporation could be subject to personal general jurisdiction in the State of Ohio where its president, who was also its general manager and principal stockholder, maintained an office, kept company files, corresponded with employees about corporate business, paid salaries on behalf of the corporation, maintained bank accounts with substantial company funds, used an Ohio bank as a transfer agent for company stock, held directors' meetings, managed company policies regarding its property in the Philippines, and sent funds to pay for projects in the Philippines.  342 U.S. 437, 447-48 (1952); *see Patterson*, 826 F.3d at 235 (applying *Perkins* "as the benchmark of the 'exceptional case' where it is appropriate to exercise general jurisdiction over a corporation outside of its principal place of business or place of incorporation").  Unlike the foreign defendant in *Perkins*, which appeared to maintain a temporary principal place of business in the State of Ohio, there is no indication that Damco BV managed its business activities from the United States. Courts have found contacts similar to those alleged here to be insufficient to establish general jurisdiction over a foreign corporation.  *See, e.g.*, *Patterson*, 826 F.3d at 235 (finding that a foreign corporation was not essentially at home where there was no evidence that the foreign corporation maintained an office, bank accounts, or conducted corporate business in the United States); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 795, 807 (E.D. Tex. 2014) (noting that residency of an out-of-state defendant's customers within the forum state is insufficient to establish general jurisdiction); *Associated Energy Grp., LLC v. Air Cargo Germany*

*GMBH*, 24 F. Supp. 3d 602, 607-08 (stating that a Russian airline's purchase of jet fuel from Texas suppliers over a two-year period did not establish general jurisdiction).   Accordingly, Relators have failed to demonstrate that Damco BV has maintained the continuous and systematic contacts necessary to support general jurisdiction in the United States.

  C. Specific Jurisdiction

  Next, Damco BV argues that Relators' allegations are insufficient to confer specific jurisdiction over it.   It is well settled that specific jurisdiction may arise without the nonresident defendant ever stepping foot upon the forum state's soil or may arise incident to the commission of a single act directed at the forum.   *See Walden*, 571 U.S. at 283 ("[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly relevant contact."); *Burger King Corp.*, 471 U.S. at 476 (holding that specific personal jurisdiction cannot be avoided merely because the defendant did not physically enter the state and that it may be based on actions that are purposefully directed toward a resident of a forum state);  *Trois*, 882 F.3d at 491; *Ritter*, 768 F.3d at 431.   A court's exercise of specific jurisdiction over a nonresident defendant, however, must arise from the defendant's suit-related conduct.   *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780; *Walden*, 571 U.S. at 284 ("The inquiry focuses on the relationship among the defendant, the forum, and the litigation." (quoting *Keeton v. Hustler Magazine*, 465 U.S. 770, 775 (1984))); *Sangha*, 882 F.3d at 101 (noting that specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities" (quoting *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008))).

The appropriate inquiry is whether the defendant purposefully availed itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of the forum state's laws, and whether the cause of action arises out of or relates to that act. *Burger King Corp.*, 471 U.S. at 475; *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Trois,* 882 F.3d at 489; *Sangha*, 882 F.3d at 101. A nonresident defendant purposefully avails itself of the benefits and protections of a forum by taking "purposeful and affirmative action" inside or outside of the forum that has reasonably foreseeable consequences within the forum. *Cent. Freight Lines Inc.*, 322 F.3d at 382 & n.6 (citing *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1007 (5th Cir. 1982)); *see Bustos v. Lennon*, 538 F. App'x 565, 567 (5th Cir. 2013); *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989). Purposeful availment also exists when the defendant's conduct and connection with the forum are such that the defendant may reasonably anticipate being haled into the forum to defend a lawsuit. *See Walden*, 571 U.S. at 286; *Bustos*, 538 F. App'x at 567; *Cent. Freight Lines Inc.*, 322 F.3d at 383; *Alpine View Co.*, 205 F.3d at 215. It is reasonable for a nonresident defendant to anticipate being haled into the forum to defend a lawsuit when it is aware that the brunt of any injury from its actions will be felt in the forum, even if its acts were committed outside the relevant forum. *See Walden*, 571 U.S. at 286; *Calder v. Jones*, 465 U.S. 783, 789 (1984).

Relators aver that Damco BV engages in business in the United States; however, none of the specifically alleged activities are related to the purportedly wrongful conduct that is the subject of this lawsuit. Even if Damco BV is registered to do business in several states, maintains a mailing address and agent to accept service of process, ships products to and from the United States, maintains business relations with several United States companies, obtains licenses from federal agencies, and enforces its rights in United States courts, specific personal jurisdiction must

be based on its case-related contacts with the United States.  Relators assert that Kristensen, "an employee on loan from Maersk Logistics and Damco [BV]," was involved in some of Damco USA's activities related to the MSA.  Kristensen's specifically alleged conduct includes setting up a quality control center in Dubai that was central to the MSA, discussing how Damco USA could recoup money after a $3.1 million settlement with DynCorp through oversize charges, counseling Damco USA to avoid talking about increased palletization charges with DynCorp, and convincing a DynCorp employee that Damco USA's cost structure was at DynCorp's request.  Assuming that Kristensen was a Damco BV employee, Relators contend that he was "on loan" to Damco USA, without distinguishing between Kristensen's acts taken on behalf of Damco BV from his acts taken on behalf of Damco USA.  *See United States v. Bestfoods*, 524 U.S. 51, 69-70 (1998) (to impute acts of a subsidiary directed by officers and directors shared by a parent and its subsidiary, plaintiff must establish that those acts were directed in their capacity as the parent's rather than the subsidiary's officers and directors).  Nor do Relators allege other acts purportedly performed by Damco BV related to the pending litigation.  As a result, Relators have failed to plead adequate facts from which it could be inferred that Damco BV had sufficient minimum contacts with the United States based on "the relationship among the defendant, the forum, and the litigation" to establish personal jurisdiction over it.  *Walden*, 571 U.S. at 284; *Keeton*, 465 U.S. at 775.

D.     Alter Ego

As a general rule, a court may not exercise personal jurisdiction over a nonresident corporation based on contacts with the forum of an affiliated corporate entity.  *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004); *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983); *see Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 336 (1925) ("Congress has not provided that a corporation of one state shall be amenable to

15

suit in the federal court for another state in which the plaintiff resides, whenever it employ[s] a

subsidiary corporation as the instrumentality for doing business therein. . . . [U]se of a subsidiary

does not necessarily subject the parent corporation to the jurisdiction."); *Dickson Marine Inc.*, 179

F.3d at 338 ("Courts have long presumed the institutional independence of related corporations,

such as parent and subsidiary, when determining if one corporation's contacts with a forum can

be the basis of a related corporation's contacts.").  Nevertheless, a court may impute the contacts

of one corporate entity to an affiliate or parent entity when the affiliate or parent is merely an alter

ego of a corporate entity that would be subject to personal jurisdiction in that court.  *See Patin v.*

*Thoroughbred Power Boats Inc.*, 294 F.3d 640, 653 (5th Cir. 2002); *Hargrave*, 710 F.2d at 1159.

> [O]ne-hundred percent ownership and identity of directors and officers are, even
> together, an insufficient basis for applying the alter ego theory to pierce the
> corporate veil. . . .  Instead, we maintain the fiction that an officer or director of
> both corporations can change hats and represent the two corporations separately,
> despite their common ownership.

*United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 691 (5th Cir. 1985), *cert. denied*, 475 U.S.

1014 (1986); *accord Bestfoods*, 524 U.S. at 69-70 & n.13; *Lusk v. Foxmeyer Health Corp.*, 129

F.3d 773, 779 (5th Cir. 1997).  Indeed, the presumption that related corporations are separate

entities persists unless it is overcome by clear evidence that the former asserts sufficient control

to make the latter its agent or alter ego.  *Freudensprung*, 379 F.3d at 346; *see Patin*, 294 F.3d at

653 ("[B]ecause the two corporations . . . are the *same entity*, the jurisdictional contacts of one

*are* the jurisdictional contacts of the other for the purposes of . . . due process analysis."); *Dickson*

*Marine Inc.*, 179 F.3d at 338 ("[C]lear evidence requires an additional or a 'plus' factor,

'something beyond the subsidiary's mere presence within the bosom of the corporate family.'");

*Hargrave*, 710 F.2d at 1159 (recognizing that a foreign parent corporation may be subject to

jurisdiction based on its subsidiary's contacts when the parent exerts control over the subsidiary

such that the entities "do not in reality constitute separate and distinct corporate entities" (quoting 2 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 4.25[6] (2d ed. 1982))). Nevertheless, to impute one corporate entity's contacts onto another entity for jurisdictional purposes, the proponent of an agency or alter ego theory need only make a prima facie case—which is a less stringent standard than establishing alter ego liability—regarding the level of control. *Hargrave*, 710 F.2d at 1161; *see First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 746 (5th Cir. 2013); *Freudensprung*, 379 F.3d at 346.

In a case presenting a federal question, the state and federal alter ego analyses are viewed as interchangeable. *See Chao v. Occupational Safety & Health Review Comm'n*, 401 F.3d 355, 365 n.3 (5th Cir. 2005) (citing *Century Hotels v. United States*, 952 F.2d 107, 110 n.4 (5th Cir. 1992)); *Jon-T Chems., Inc.*, 768 F.2d at 690 n.6 (collecting cases).  Factors a court may consider to determine whether a nonresident entity can be amenable to personal jurisdiction through the contacts of a subsidiary or affiliate include:  (1) the amount of the subsidiary's or affiliate's stock owned by the nonresident entity; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the nonresident entity exercises complete control over the subsidiary's or affiliate's general policies or daily activities.  *Freudensprung*, 379 F.3d at 346 (citing *Hargrave*, 710 F.2d at 1160); *Dickson Marine Inc.*, 179 F.3d at 339; *see Jon-T Chems., Inc.*, 768 F.2d at 691-92 (listing additional factors in the context of establishing alter ego liability).

The Third Amended Complaint states:

[Damco USA, Damco BV, and other named entities] are related entities sharing common employees, offices, and business names such that they are joint and severally liable under legal theories of respondeat superior.  Further, the past,

> present, and continuing relations and dealings by and between these related entities
> are so inextricably intertwined that for purposes of this suit, some or all of them
> can and should be considered the alter of each entity at law and equity.

(#83, at 13 ¶ 24).  Even assuming *arguendo* that Damco BV owns 100 percent of the stock in

Damco USA, Relators do not delineate the existence of additional factors to establish alter ego

status.  Relators argue that they have made a prima facie case of alter ego jurisdiction by alleging

that Damco BV and Damco USA shared corporate officers and employees, namely Kristensen and

Percival, and the President of Damco USA had power of attorney from Damco BV, "resulting in

one corporate direction for both entities."  Relators also maintain that Damco BV uses Damco

USA's business addresses for corporate filings, conducting business, and providing company

details for its shipments to the United States.

Relators rely on *Pacheco v. Dibco Underground, Inc.*, in support of their contention that

they have asserted a prima facie case of alter ego jurisdiction.  No. A-08-CA-187-SS, 2008 WL

11334107 (W.D. Tex. Aug. 7, 2008).  In *Pacheco*, the plaintiffs demonstrated not only that the

defendant parent corporation owned 100 percent of the defendant subsidiary corporation's stock

and that the two entities shared headquarters, but also that they shared key corporate officers who

performed essential business functions, the subsidiary maintained nominal headquarters with no

employees and had never held meetings of shareholders or directors, case-linked bills and

correspondence were consistently routed to the parent company, and the subsidiary was

undercapitalized.  *Id.* at *2.  Although the defendants maintained that the subsidiary was not

undercapitalized; kept separate financial records, tax returns, and payroll accounts; and had a

different president, the court noted that the defendants' presidents were father and son, and

concluded that plaintiffs had made a prima facie showing of alter ego status.  *Id.* at *2-3.

Here, in contrast, Relators' allegations do not suggest that the daily operations of Damco BV and Damco USA are intertwined to the same extent as those alleged in *Pacheco*.  Relators do not dispute that Damco BV is headquartered in the Netherlands; therefore, they cannot claim that it shares the same headquarters as Damco USA.  They identify Kristensen as an employee or agent of Damco BV who played a significant role at Damco USA without mentioning what responsibilities, if any, Kristensen had at Damco BV.  Percival is not named in the Third Amended Complaint, and his only apparent connection to Damco BV is being listed as "Compliance Officer" on Damco BV's application for an Ocean Transportation Intermediary License from the Federal Maritime Commission.  For the first time in their Response, Relators aver that Percival is listed as Vice President on Damco USA corporate filings in several states and that he authored a letter from Damco USA to the Government containing allegedly false information regarding an internal audit and Damco USA's oversize charges.  While both entities may at times share these two individuals, the Fifth Circuit has recognized that an identical board of directors and officers—which is not alleged here—merely reflects a normal parent-subsidiary relationship and is not a sufficient basis to apply alter ego jurisdiction.  *See Jon-T Chems., Inc.*, 768 F.2d at 691; *Hargrave*, 710 F.2d at 1160.  Thus, Relators' allegations are not adequate to suggest that Damco BV exerted control over Damco USA's general policies, daily activities, or specifically with regard to the purportedly wrongful conduct that is the basis of this suit.  Accordingly, the court finds that Relators have not adduced sufficient facts to assert a prima facie case of alter ego status in order to overcome the presumption of corporate separateness.  Hence, imputing Damco USA's contacts to Damco BV in an effort to establish personal jurisdiction over Damco BV is unwarranted in this case.

E.      Jurisdictional Discovery

Relators urge the court to grant limited jurisdictional discovery if it finds that there are insufficient facts to assert personal jurisdiction over Damco BV.  Relators specifically seek information regarding Damco BV and Damco USA's internal financing, corporate formalities, and maintenance of accounting systems, in addition to determining whether Damco USA is adequately capitalized.  "[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978); *see Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982) ("When a defendant challenges personal jurisdiction, courts generally permit depositions confined to the issues raised in the motion to dismiss.").  "As the party opposing dismissal and requesting discovery, the plaintiffs bear the burden of demonstrating the necessity of discovery." *Ritter*, 768 F.3d at 434 (quoting *Davila v. United States*, 713 F.3d 248, 263-64 (5th Cir. 2013)).  The party seeking jurisdictional discovery must first make a preliminary showing of jurisdiction.  *See id.*; *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)); *accord Next Techs., Inc. v. ThermoGenisis, LLC*, 121 F. Supp. 3d 671, 676 (W.D. Tex. 2015).  "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Bonner v. Triple-S Mgmt. Corp.*, 661 F. App'x 820, 822 (5th Cir. 2016) (quoting *Wyatt*, 686 F.2d at 284)); *see Ritter*, 768 F.3d at 434; *Alpine View Co.*, 205 F.3d at 221.

Under these circumstances, although Relators argue that Damco BV and Damco USA present themselves as one entity and that Damco USA has disclosed documents referencing individuals who are not its employees, the court finds that Relators have not alleged a prima facie

case of personal jurisdiction necessary to merit jurisdictional discovery.   Therefore, Relators'

request for limited jurisdictional discovery is denied.

III.     Conclusion

Based on the foregoing analysis, Damco BV's Motion to Dismiss Relators' Third Amended

Complaint (#91) is GRANTED, and its Motion to Stay Discovery (#98) is DENIED AS MOOT.

Accordingly, Relators' claims against Damco BV are dismissed for lack of personal jurisdiction,

and Damco BV is dismissed as a defendant in this case.

SIGNED at Beaumont, Texas, this 1st day of March, 2019.

*Marcia A. Crone*

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE