**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *ex rel.* ROBERT REDDELL and | § | |
| ROBERT HENDRIX, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | Civil Action No. 1:14-CV-00086 |
| | § | |
| v. | § | |
| | § | |
| DYNCORP INTERNATIONAL, LLC and | § | Judge: Marcia A. Crone |
| DAMCO U.S.A., INC., | § | |
| | § | |
| | § | |
| Defendants. | § | |

**RELATORS ROBERT REDDELL AND ROBERT HENDRIX'S MOTION TO
EXCLUDE THE EXPERT OPINIONS OF BILL WALTER AND STEVE TRAUTWEIN**

# **TABLE OF CONTENTS**

INTRODUCTION………….....................................................................................1

NATURE AND STAGE OF PROCEEDING ............................................................2

STATEMENT OF FACTS ......................................................................................3

STATEMENT OF ISSUES AND STANDARD OF REVIEW ..................................4

SUMMARY OF ARGUMENT ………………………………………………...5

ARGUMENT ………………………....................................................................6

A.    Joint Report Opinions 4, 5, 6, 7, 8, and Rebuttal Report Opinion 1 are unsupported by the evidence and based on an unreliable methodology with a false premise. …………6

    1.    The plain language of the MSA states that it is an IDIQ agreement with a fixed-unit rate, and FAR 31 and cost accounting standards would apply even if the MSA was a fixed-price agreement for commercial services. …………7

    2.    A DCAA memorandum and other correspondence further undermine Walter and Trautwein's premise. …………………………………………8

    3.    Internal DynCorp communications and the testimony of multiple employees contradict the premise of Walter and Trautwein's opinions. ………………………9

    4.    The Court should exclude Joint Report Opinions 4, 5, 6, 7, 8, and Rebuttal Report Opinion 1 as unreliable. ………………………………………10

B.    Joint Report Opinions 1, 4, 6, and 8 constitute improper and inadmissible legal opinions. ………………………………………………………………10

    1.    Opinions interpreting the meaning of FAR clauses are inadmissible legal opinions. ………………………………………………………………11

    2.    Walter and Trautwein's assertion that the language of the MSA anticipated price changes is a legal opinion. ………………………………………11

    3.    Walter and Trautwein's opinion that DynCorp's techniques for selecting Damco as its Transportation Service Provider complied with FAR Part 15 is an inadmissible legal opinion. ………………………………………12

C.    Joint Report Opinions 1 and 7 are also unreliable, because they are based on

assumptions unsupported or contradicted by the evidence. …………………………...13

    1.    Joint Report Opinion 1 is unsupported by the evidence. …………………………13

    2.    Joint Report Opinion 7 is also unsupported by the evidence and therefore unreliable. …………………………………………………………………………...13

CONCLUSION…………... ......................................................................................................14

# <u>TABLE OF AUTHORITIES</u>

*Black v. Food Lion, Inc.,*
  171 F.3d 308, (5th Cir. 1999) ................................................................................5

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) .................................................................................... 1, 4, 5

*Kellogg Brown & Root Servs., Inc. v. Sec'y of the Army*,
  973 F.3d 1366 (Fed. Cir. 2020) ............................................................................7

*Kumho Tire v. Carmichael*
  526 U.S. 137 (1999) ......................................................................................... 1, 4

*Mathis v. Exxon Corp.*
  302 F.3d 448 (5th Cir. 2002) ................................................................................6

*Matosky v. Manning*,
  428 F. App'x 293 (5th Cir. 2011) .......................................................................13

*Owen v. Kerr-McGee Corp.*
  698 F.2d 236 (5th Cir. 1983) ...................................................................... 1, 10, 12

*Paz v. Brush Engineered Materials, Inc.*,
  555 F.3d 383 (5th Cir. 2009) ................................................................................6

*Renfroe v. Parker*,
  974 F.3d 594 (5th Cir. 2020) ..............................................................................10

*Seaman v. Seacor Marine LLC*,
  326 F. App'x 721 (5th Cir. 2009) .........................................................................7

*Smith v. Goodyear Tire & Rubber Co.*,
  495 F.3d 224 (5th Cir.2007) ........…………………………………………………..5

*U.S. v. Williams*,
  343 F.3d 423 (5th Cir. 2003) …………………………………………………10

*Viterbo v. Dow Chem. Co.*,
  826 F.2d 420 (5th Cir. 1987) …………………………………………………5

## INTRODUCTION

Federal Rule of Evidence 702, as well as the well-established *Daubert* framework, place the court in a "gatekeeping" role, wherein it must determine whether an expert's testimony is "relevant to the task at hand" and rests on a "reliable foundation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 157 (1999). Expert testimony also must be free of legal analysis and conclusions, as that is a role reserved for the court. *See Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 238 (5th Cir. 1983) ("[A]llowing an expert to give his opinion on legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.")

This motion seeks to exclude the proffered testimony of Steve Trautwein ("Trautwein") and Bill Walter ("Walter"), designated as expert witnesses by Defendant DynCorp International, LLC ("DynCorp"). On December 21, 2020, DynCorp served an expert report co-signed by Walter and Trautwein ("Joint Report"). On January 22, 2021, DynCorp also served a separate expert report authored by Walter ("Walter Rebuttal Report") to rebut the report of Relators' damages expert, Michael Walker ("Walker").

Walter and Trautwein's testimony is unreliable, irrelevant, and comprised of improper (and inaccurate) legal conjecture. The crux of their analysis rests on the false premise that FAR 31 and cost accounting standards do not govern DynCorp's oversight of all its subcontracts, including the Master Sourcing Agreement (MSA) between DynCorp and its subcontractor, Defendant Damco U.S.A., Inc. ("Damco"). This premise is unreliable, as it is not only unsupported by the evidence, but also flatly contradicted by it. Joint Report Opinions 4, 5, 6, 7, and 8 and Rebuttal Report Opinion 1 should be excluded because of unreliability and lack of relevance.

Furthermore, Opinions 1, 4, and 6 of the Joint Report consist of improper (and often irrelevant) legal conjecture and argument. Walter and Trautwein merely parrot DynCorp's legal arguments and attempt to usurp the role of the Court. The Court should exclude these opinions, as they are nothing more than improper legal conclusions.

## NATURE AND STAGE OF PROCEEDING

Relator Robert Reddell filed this False Claims Act qui tam action on February 5, 2014 and was joined by Relator Robert Hendrix (collectively, "Relators") on May 30, 2017. Relators assert that DynCorp and Damco (collectively, "Defendants") fraudulently and systematically employed a scheme to overcharge the United States (the "Government") while performing logistics support for the United States Army under the Logistics Civil Augmentation Program IV contract ("LOGCAP IV").

On March 20, 2019, the Court held Relators had plausibly pled that "DynCorp knowingly presented Damco's unallowable or fictitious charges to the Government for reimbursement, and that Damco, by submitting those charges to DynCorp, knowingly caused DynCorp to present its false claims." Dkt. No. 114, 32. The Court further held that Relators had plausibly pled that the parties had perpetuated a conspiracy and that "DynCorp knowingly made or used, and that Damco caused DynCorp to make or use, false records or statements that they knew were material to their false claims." *Id.* at 32-33.

Relators served the report of their damages expert, Michael Walker ("Walker"), on November 20, 2020. *See* exhibit 1 (Walker expert report). On December 21, 2020, DynCorp served an export report jointly authored by Walter and Trautwein. *See* exhibit 2 (Joint Report). On January 22, 2021, DynCorp served a report authored solely by Walter to rebut Walker's report, and Relators served a report authored by Walker to rebut all of Defendants' expert reports, including the Walter

and Trautwein Joint Report. *See* exhibit 3 (Walter Rebuttal Report); *see also* exhibit 4 (Walker Rebuttal Report).

Relators deposed Walter on March 9, 2021 and Trautwein on March 11, 2021. Expert discovery closed on March 26, 2021.

## STATEMENT OF FACTS

Bill Walter worked briefly as an auditor for the Defense Contract Audit Agency (DCAA)[1] in the 1980s but has spent most of the last thirty-five (35) years acting as a consultant for defense contractors.[2] Steve Trautwein worked for the Defense Contract Management Agency (DCMA)[3] from 1978 to 2017 but also has spent the last four years providing consulting services to defense contractors. Walter and Trautwein currently work for Dixon Hughes Goodman (DHG), a consulting company. DynCorp is compensating Walter at a rate of $550/hour for work on the report and $650/hour for any testimony, and Trautwein is being compensated at the rate of $425/hour for work on the report and $525/hour for any testimony. *See* exhibit 2, 1.

Walter and Trautwein were asked by DynCorp to "



." *Id.* Walter and Trautwein concluded that "

." *Id.*

As relevant to the instant motion, Walter and Trautwein concluded:

---

[1] DCAA provides audit and financial advisory services to the Department of Defense (DOD) and other federal entities responsible for acquisition and contract administration.
[2] Walter also worked for defense contractor KBR, Inc. from 2003 – 2010.
[3] DCMA provides contract administration services for the Department of Defense.

- DynCorp conducted a thorough and appropriate process to select Damco as a subcontractor, including sufficient market research, in compliance with FAR Part 15. (<u>Joint Report, Opinion 1</u>).

- DynCorp's Corporate ACO (CACO) properly approved the MSA and pre-authorized DynCorp to issue orders under the MSA without consent for contracts administered by DCMA. (<u>Joint Report, Opinion 3</u>).

- The MSA, as approved by the CACO, included specific language anticipating that changes would be made to pricing during performance and specifically allowed DynCorp to accept updates and revisions to the pricing in the MSA without additional Government review or consent. (<u>Joint Report, Opinion 4</u>).

- The MSA was a fixed-price commercial item agreement, and it was exempt from the requirements contained in the Cost Accounting Standards (CAS) and Truth in Negotiations Act (TINA). (<u>Joint Report, Opinion 5</u>).

- Damco had no obligation to disclose to DynCorp (and DynCorp was not obligated to obtain or disclose to the Government) information regarding Damco's actual costs in performing the MSA. (<u>Joint Report, Opinion 6</u>).

- DynCorp's basic invoice review practices, and the type of supporting data DynCorp obtained from Damco to support payment of its invoices, were adequate given the fixed-price commercial services nature of the MSA. (<u>Joint Report, Opinion 7</u>).

- The allowability of Damco costs forwarded to the Government by DynCorp does not depend on the actual costs incurred by Damco. (<u>Joint Report, Opinion 8</u>).

*See* exhibit 2, 2 (Joint Report).

Walter's Rebuttal Report similarly asserts that the MSA was a fixed-price, commercial item agreement. *See* exhibit 3, 1 (Walter Rebuttal Report). The Rebuttal Report also concludes that because the MSA was supposedly a fixed-price, commercial item agreement: 1) it was acceptable for Damco to bill DynCorp for unincurred costs and 2) DynCorp could revise the fuel surcharge rate without advance approval. *Id.* at 1-2.

## <u>STATEMENT OF ISSUES AND STANDARD OF REVIEW</u>

Federal Rules of Evidence 702 and 703, as interpreted by *Daubert*, 509 U.S. 579, *Joiner*, 522 U.S. 136, and *Kumho Tire*, 526 U.S. 137, govern the admissibility of expert testimony. In

*Daubert v. Merrell-Dow Pharmaceuticals, Inc*., the Supreme Court established that trial courts are responsible for determining whether expert testimony should be presented to the jury. *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 592 (1993). This "gatekeeping" function is meant to ensure the reliability and relevance of expert testimony. *See Black v. Food Lion, Inc.,* 171 F.3d 308, 311 (5th Cir. 1999). Expert testimony is relevant if it will assist the trier of fact in understanding or determining a fact in issue. *Daubert*, 509 U.S. at 590-91.

The party seeking to introduce expert testimony bears the burden of showing "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Smith v. Goodyear Tire & Rubber Co.,* 495 F.3d 224, 227 (5th Cir.2007); *see also Mathis v. Exxon Corp.,* 302 F.3d 448, 459–60 (5th Cir. 2002) ("The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the rule 702 test."). "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987).

## <u>SUMMARY OF ARGUMENT</u>

Under the Federal Rules of Evidence and *Daubert*, expert testimony must be reliable and helpful to a jury. Walter and Trautwein's testimony is neither. Instead, it is needlessly cumulative, and the majority of their opinions are based on an unreliable methodology, which is the false premise that FAR 31 and cost accounting standards did not govern DynCorp's oversight of the MSA and that the MSA was supposedly a fixed-price agreement for commercial services.

The evidence in the case, however, including: 1) the plain language in the MSA, 2) a DCAA memorandum and the position expressed by the LOGCAP Contracting Officer, and 3) internal correspondence and testimony from those at DynCorp who oversaw the LOGCAP IV

contract, all show that Walter and Trautwein's premise, and their resulting conclusions, are entirely unreliable and must be excluded.

Furthermore, much of Walter and Trautwein's testimony would usurp the role of the Court should it be admitted. The purpose of expert testimony is to assist the court with understanding complex facts, not to parrot legal arguments and advance legal conclusions. Walter and Trautwein's report, however, is replete with improper and inadmissible legal conclusions.

## ARGUMENT

**A.    Joint Report Opinions 4, 5, 6, 7, 8, and Rebuttal Report Opinion 1 are unsupported by the evidence and based on an unreliable methodology with a false premise.**

To be admissible, an expert's testimony must be deemed reliable, including "the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion." *Seaman v. Seacor Marine LLC*, 326 F. App'x 721, 725 (5th Cir. 2009). An expert must have "good grounds" for his belief. *Daubert*, 509 U.S. at 590. Expert testimony is inadmissible when it rests on speculation or erroneous information. *See Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009); *see also Knight*, 482 F.3d at 354 ("The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia.").

Opinions 4, 5, 6, 7, and 8 in the Joint Report, as well as Opinion 1 in Walter's Rebuttal Report, all assume that the MSA was a fixed-price, commercial services agreement and that FAR 31 and cost accounting standards did not apply. The MSA was in fact an Indefinite Delivery, Indefinite Quantity (IDIQ) Agreement with fixed-unit pricing, as plainly stated in the preamble. *See* exhibit 5 at BARR-000005 (MSA between DynCorp and Damco).

Moreover, even if Walter and Trautwein were correct and the MSA was in fact a fixed-price, commercial services agreement (which it is not), a prime contractor's duties under FAR 31

apply fully to fixed-price contracts, as the Federal Circuit held in *Kellogg Brown & Root Servs., Inc. v. Sec'y of the Army*, 973 F.3d 1366 (Fed. Cir. 2020) (holding FAR 31.201.2(A) applicable to the subcontract and the burden to establish the reasonableness of a cost is on the Prime Contractor).

In other words, even if Walter and Trautwein were correct, *FAR 31 and cost accounting standards would still govern DynCorp's oversight of the MSA and would still apply.* Walter and Trautwein's opinions are simply unsupported and therefore unreliable.

1.    **The plain language of the MSA states that it is an IDIQ agreement with a fixed-unit rate, and FAR 31 and cost accounting standards would apply even if the MSA was a fixed-price agreement for commercial services.**

In addition to stating that it is an IDIQ agreement, the MSA also states that no revenue was guaranteed under the agreement. *See* exhibit 5 at BARR-000005. It contained no fixed ceiling for cost, and because there was no set amount to be paid under the contract, the MSA was not a firm-fixed-price contract. Furthermore, the MSA clearly lists each of the FAR flow-down clauses which Damco agreed to by signature, and these clauses specifically state that Damco is bound by FAR Cost Accounting Standards. *Id.* at BARR-000017-18.

Furthermore, once DynCorp promised the United States that it would ensure that the claims it passed on to the United States were allocable and incurred, that obligation could not be altered by the terms it negotiated with Damco. If DynCorp were to choose to enter a subcontract that allowed a subcontractor to invoice for made-up charges and fictitious services without reserving any right to audit its subcontractor, that would not relieve DynCorp of its own duty to prove up costs. FAR 31 would still be in the Prime Contract. No exemption to the Prime Contract exists for the MSA, and FAR 31 governs DynCorp's oversight of all its subcontracts.

2.     **A DCAA memorandum and other correspondence further undermine Walter and Trautwein's premise.**

Walter and Trautwein's opinion that the MSA was exempt from FAR Cost Accounting Standards is also contrary to statements made by DCAA in a May 2020 memorandum. On June 5, 2020, DCMA sent DynCorp a DCAA memorandum as support for potentially disallowing over $31.3 million in subcontract costs for failure to comply with FAR 31.2 Contract Cost Principles. *See* exhibit 6 (June 5, 2020 letter from DCMA). The accompanying May 22, 2020 DCAA memorandum provides:

- "We do not accept the invoices created by the primary subcontractor DAMCO as reliable support for the subcontract cost because the invoices include cost line items (assessorial fees) that are not included in the subcontract with DynCorp."

- "We do not accept the DynCorp general ledger costs as reliable support for the subcontract cost because the general ledger costs are based on the DAMCO invoices."

- "We accept that the invoice information from Diplomat Freight Services (DFS) is the original source documents of the DAMCO subcontract costs. During the course of the investigation, we learned that the actual freight movement was accomplished by DFS under subcontract to DAMCO. We have not found reason to question the reliability of the DFS invoice and airway bill information and we used this information as the basis of estimate for our subcontract cost estimate."

*See* exhibit 7 (May 22, 2020 DCAA memorandum).

Furthermore, Lindsay Wingate, LOGCAP Contracting Officer, stated to DynCorp's Jim Percival in an August 26, 2014 e-mail, "I believe DAMCO has a fixed unit rate type contract with DynCorp so therefore that contract is not a fixed price contract and DAMCO would be required to provide cost information to the Government." *See* exhibit 8 (August 26, 2014 e-mail from Lindsay Wingate to Jim Percival).

3.    **Internal DynCorp communications and the testimony of multiple employees contradict the premise of Walter and Trautwein's opinions.**

Further undermining Walter and Trautwein's conclusions are numerous internal emails illustrating DynCorp's acknowledgment of the applicability of FAR 31.201 to the Damco MSA. For example:

- Internal email dated January 30, 2013 from Rick Chevalier, DynCorp's Senior Category Manager, to Kevin Bryant, where Chevalier, in response to a question about LOGCAP flow-downs to Damco and UPS, confirms that " ███████████████████████████ ." *See* exhibit 9. This would include Damco's duty to support costs under 52.215.

- October 19, 2012 email between now DynCorp Vice President, Government Finance and Compliance, Chris Gilley and Relator Robert Reddell stating: ████████████████████████████ ██████████████████ " … citing FAR 31.201.2.  *See* exhibit 10.

- February 24, 2013 email from James Grazioplene, former Program Manager for LOGCAP IV, to Rick Chevalier stating, ████████ ██████████████████████████████████████ ██████████████████ *See* exhibit 11.

- March 14, 2013 email from Krista Robinson, former Vice President of Sourcing/Supply Chain Management, LOGCAP IV: " █████████████ ██████████████████████████ ." *See* exhibit 12.

Furthermore, DynCorp employees testified that they knew the MSA was governed by FAR 31.201. For example, Adam Nicholas, DynCorp's former Director of Logistics & Operations, Supply Chain Center of Excellence, testified that he has been familiar with FAR since around December 1986. *See* exhibit 13 at 29. He testified that DynCorp, its legal team, and the Defense Contract Management Agency at Rock Island all interpreted the FAR in the same way. "It's in plain English. It's not overly exertive task to be compliant with FAR. Again, it was written so anyone can use it and be compliant. It's not rocket science." *Id.* exhibit at 30-31.

Furthermore, Rick Chevalier, former Senior Category Manager Global Freight and Logistics, testified that he was also familiar with FAR. *See* exhibit 14 at 14. He testified that FAR provides guidelines as to how the federal government wants one to procure services and goods and that it was his understanding that the contract between DynCorp and Damco was subject to it. *Id.* He further testified that flow-down means that the obligations would flow to the subcontractors and that a subcontractor to DynCorp would still need to adhere to those provisions. *Id.* at 15-16.

### 4. The Court should exclude Joint Report Opinions 4, 5, 6, 7, 8, and Rebuttal Report Opinion 1 as unreliable.

In sum, the premise behind Joint Report Opinions 4, 5, 6, 7, 8, and Rebuttal Report Opinion 1 is completely contradicted by 1) the plain language of the MSA, 2) a DCAA memorandum and the position expressed by the LOGCAP Contracting Officer, 3) internal DynCorp communications, and 4) the sworn testimony of those overseeing the LOGCAP IV contract at DynCorp, including the Program Manager, Vice President of Government Finance/Compliance, and the Vice President of Sourcing/Supply Chain Management. Walter and Trautwein's methods for reaching their opinions are thus unreliable, and their opinions should be excluded.

## B. Joint Report Opinions 1, 4, 6, and 8 constitute improper and inadmissible legal opinions.

An expert is not permitted to render legal conclusions or provide opinions on legal issues. *Renfroe v. Parker*, 974 F.3d 594, 598 (5th Cir. 2020). Allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant. *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983). Accordingly, such testimony is inadmissible because it provides no information to the trier of fact except what the verdict should read. *Id. See also U.S. v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) ("Rule 704(a)…does not allow a witness to give legal conclusions.").

-10-

1.     **Opinions interpreting the meaning of FAR clauses are inadmissible legal opinions.**

Interpretations of FAR clauses and conclusions regarding their applicability to the MSA are matters of law that must be left to the Court. During his deposition, Trautwein testified that it was his understanding that when a judge issues a ruling interpreting the FAR regulations in a case in which he (Trautwein) is involved, the judge is creating the law that governs the case. *See* exhibit 15, 45:4-9 (Trautwein deposition transcript). Trautwein also testified that he claims no expertise in the law. *Id.*, 43:13-19.

Despite the inadmissibility of the testimony, Walter and Trautwein's report includes legal opinions and interpretations of FAR. For example, Opinion 8 in Walter and Trautwein's report asserts that Damco did not actually have to incur a cost for that cost to be allowable, and they base this erroneous conclusion on their interpretations of multiple FAR provisions, including FAR 16.202-1, FAR 31.201, and FAR 52.216-7. *See* exhibit 2, 11-12 (Joint Report). Opinion 8 is improper for expert testimony, the purpose of which is to "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Opinion 8 consists entirely of legal arguments, and the testimony must be excluded on that basis.

2.     **Walter and Trautwein's assertion that the language of the MSA anticipated price changes is a legal opinion.**

In Opinion 4, Walter and Trautwein conclude that FAR provisions, DoD Guidebooks, and the language in the MSA allowed for price changes during performance of the MSA without additional Government review or consent. *See* exhibit 2, 6-8 (Joint Report). In reaching their conclusion, Walter and Trautwein offer inadmissible legal analysis and conclusions regarding the meaning of FAR clauses and the terms of the MSA, including the following:

- "███████████████████████████████████████████████
████████████████." Exhibit 2, ¶ 31.

-11-

- FAR 52.244-6 required DynCorp to incorporate commercial items to the maximum extent practicable. Exhibit 2, ¶ 32.

- Department of Defense Commercial Guidebooks make clear that DoD had a preference for acquiring commercial items and ██████████ ████████████." Exhibit 2, ¶ 34.

- DoD Commercial Guidebooks also "dictate" that the preferred approach is to rely on market data as opposed to the offeror's cost and pricing data. Exhibit 2, ¶ 35.

- The "████████████████████" in MSA § 6.4 "████████ ███████████████" provides the Government protection from unreasonable cost increases. Exhibit 2, ¶ 37.

Walter and Trautwein's interpretation and application of FAR provisions and DoD Guidebooks constitute improper and inadmissible legal opinions.

**3.    Walter and Trautwein's opinion that DynCorp's techniques for selecting Damco as its Transportation Service Provider complied with FAR Part 15 is an inadmissible legal opinion.**

In Opinion 1 of their Joint Report, Walter and Trautwein assert that DynCorp "████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████." Exhibit 2 at 2.

As the Fifth Circuit has noted, "allowing an expert to give his opinion on legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 238 (5th Cir. 1983). Whether DynCorp's conduct complied with FAR Part 15 is unquestionably a matter of law. Opinion 1 should be excluded.

-12-

**C.    Joint Report Opinions 1 and 7 are also unreliable, because they are based on assumptions unsupported or contradicted by the evidence.**

### 1.  Joint Report Opinion 1 is unsupported by the evidence.

During his deposition, Trautwein was shown documents evidencing that DynCorp awarded the MSA even though Damco did not receive the highest technical score. Trautwein testified that he had no knowledge or understanding related to changes in technical scoring and that he had not reviewed documents related to technical scores when opining that DynCorp complied with FAR Part 15. For example, Trautwein had not reviewed a document showing Damco received a final score of 72 during bidding process, which was not the highest. *See* Exhibit 15, 67:7-13 (Trautwein deposition transcript).

Similarly, Trautwein could not recall what he reviewed that supported the assertion that DynCorp only considered base rates and not accessorial charges when evaluating bids. *See* Exhibit 15, 73:20-74:1. Trautwein maintained that DynCorp did not consider accessorials, even though the assertion was unsupported by the record. *Id.*, 107:7-11.

The Court should exclude Walter and Trautwein's Opinion 1 that DynCorp conducted a thorough and appropriate selection process, as conclusory opinions unsupported by evidence are inadmissible. See, e.g., *Matosky v. Manning*, 428 F. App'x 293, 298 (5th Cir. 2011) (excluding expert for "conclusory assertions").

### 2.  Joint Report Opinion 7 is also unsupported by the evidence and therefore unreliable.

In Opinion 7 of their report, Walter and Trautwein conclude that DynCorp's invoice review practices and the type of data DynCorp obtained from Damco to support the charges were "adequate." *See* exhibit 2, 9-10. In reaching this opinion, however, Walter and Trautwein only reviewed the deposition transcript of Jetta Aiello, a DynCorp logistics clerk, and failed to consider

-13-

key evidence that directly contradicts their conclusion that DynCorp's process for reviewing invoices was adequate. *See* Exhibit 15, 148:14-18 (Trautwein deposition transcript).

For example, Trautwein testified that he had not reviewed the deposition testimony from Krista Robinson, DynCorp's Vice President of Sourcing/Supply Chain Management, LOGCAP IV. *Id.*, 149:12-14. Trautwein was shown an excerpt of Robinson's deposition transcript in which she testified that DynCorp's invoice review process had "failed" and that it was "unreasonable" and "unrealistic" to expect a logistics clerk like Jetta Aiello to be knowledgeable enough to approve the invoices or raise issues about the invoice or documentation if needed. *See* exhibit 16, 120:9-121:7 (excerpt of Krista Robinson's deposition transcript marked as deposition exhibit 0010). Robinson further testified that Aiello was overwhelmed with the amount of freight DynCorp was moving. *Id.* at 121:8-15.

Walter and Trautwein failed to consider anything other than Ms. Aiello's testimony in reaching Opinion 7, and the evidence in the record does not support their conclusion. Walter and Trautwein's underlying methodology is unreliable, and Opinion 7 should be excluded.

## **CONCLUSION**[4]

In sum, Walter and Trautwein's testimony is unreliable, irrelevant, and comprised of improper legal conjecture, and the Court should exclude it.

---

[4] Exhibits 1, 2, 3, 4, 9, 10, 11, 12, 14, and 16 were filed under seal in compliance with the parties' Stipulated Protective Order (Dkt. 94).

Respectfully submitted,

**BERG & ANDROPHY**

*/s/ Janis G. Gorton*
Joel M. Androphy
TX State Bar No. 01254700
Janis G. Gorton
TX State Bar No. 24071063
Caroline K. Gorman
TX State Bar No. 24109939
3704 Travis Street
Houston, Texas 77002
Telephone (713) 529-5622
Facsimile (713) 529-3785
jandrophy@bafirm.com
jgorton@bafirm.com
cgorman@bafirm.com

Sarah M. Frazier
TX State Bar No. 24327320
Law Office of Sarah Frazier, PLLC
1919 Decatur Street
Houston, Texas 77007
Telephone (713) 510-3336
sarah@sarahfrazierlaw.com

Greg M. Dykeman
TX State Bar No. 06325100
Stacie L. Augustine
TX State Bar No. 24050239
Strong Pipkin Bissell & Ledyard LLP
595 Orleans
1400 San Jacinto Bldg.
Beaumont, TX 77701-3255
Telephone: 409-981-1120
Facsimile: 409-981-1010
gdykeman@strongpipkin.com
saugustine@strongpipkin.com

**ATTORNEYS-IN-CHARGE FOR
RELATORS ROBERT REDDELL AND
ROBERT HENDRIX**

## **CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Relators and counsel for DynCorp have met the conferral requirement pursuant to Local Rule CV-7. On May 28, 2021, counsel for Relators and counsel for DynCorp had a telephonic meet and confer in which Relators' counsel advised counsel for DynCorp that Relators intended to file a motion asking the Court to exclude the expert testimony of Bill Walter and Steve Trautwein on *Daubert* grounds. Relators' counsel asked counsel for DynCorp whether DynCorp planned to withdraw them as witnesses. Counsel for DynCorp indicated that DynCorp would not withdraw Mr. Walter or Mr. Trautwein as witnesses, which necessitated the instant motion.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 28, 2021, a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

<u>*/s/ Janis G. Gorton*</u>
Janis G. Gorton